## TERRITORY *v.* KINNEY.

January Term, 1884.

1. CHANGE OF VENUE—PREJUDICE—DISCRETION OF TRIAL COURT.

The ruling of the trial court refusing a change of venue because of local prejudice will not be disturbed where the trial judge was himself a resident of that county, and personally cognizant of the feeling of the community, and where the jury was drawn from the body of the whole district, and not alone from the county in question.

2. CRIMINAL LAW—CONTINUANCE—ABSENCE OF WITNESSES.

Where the defendant, indicted for larceny, was charged with the purchase of cattle, knowing them to have been stolen, the refusal of a continuance on account of the absence of witnesses who could prove an *alibi*, and also would testify from whom defendant had bought the cattle, will not be disturbed as an abuse of discretion, where it appears that subsequently, at the trial, defendant himself failed to take the stand and testify as to these facts in his own behalf.

3. SAME—EVIDENCE OF ACCOMPLICE.

Though the uncorroborated evidence of an accomplice should be received with great caution, it is not error for the court to refuse to instruct that such evidence is insufficient to warrant a conviction.

4. SAME—CORROBORATION.

Though the testimony of an accomplice is not corroborated by evidence that defendant was present at the scene of a crime the evening before its commission, such evidence becomes material and pertinent by its contradiction of witnesses to establish an *alibi* showing that defendant was at that time in another town, many miles distant.

*William Breeden,* for the Territory.

*W. T. Thornton,* for appellant.

BELL, J. The appellant was jointly indicted with several other persons in the district court for Dona Ana county, at the March term, 1883. The offense charged was the larceny of certain cattle. He was tried separately, convicted, and sentenced to imprisonment for five years, and to pay a fine of $500. From this judgment against him he has appealed.

The errors alleged to have been committed in the court below are— *First,* an abuse of discretion on the part of the court in refusing to change the venue. The rule of law is that the appellate court will not ordinarily entertain an appeal from the ruling of the court below on a matter that is purely in the discretion of that court. Before doing so it must appear that the discretion has been so grossly abused as to amount to a perversion of justice. The question of a change of venue is addressed to the sound discretion of the court, and is, perhaps, more than any other exercise of discretion, a difficult one to review. The appellate court can never have before it all the facts and circumstances as they appeared to the presiding judge in the court below, and upon which his ruling was founded. The change of venue was prayed for in this case because of the alleged prejudice which existed among the residents of Dona Ana county against the defendant. It was supported by the affidavits of several

citizens of that county. These affidavits charge, in substance, that it would be impossible to secure in that county an impartial jury. The court thought otherwise, and denied the motion. In considering the appeal from that ruling, this court must be justly influenced by the fact that the learned judge who presided in the lower court has, for many years, been himself a resident and citizen of Dona Ana county. He was personally cognizant of the condition of feeling existing in that community, and was, of course, the very best judge of its possible effect upon the trial of the defendant. The ruling of the court on the question, therefore, may have been based upon much better evidence than the record here affords us. In addition to these considerations, this court will also take judicial notice that the panel of jurors selected to try causes at the district court for the Third judicial district of the territory, and held at Las Cruces, were, under the law, drawn from the body of the whole district, which comprises three of the largest counties of the territory, and that, therefore, local prejudice in Dona Ana county—if such prejudice existed—would not necessarily prevent securing a jury from the other counties of the district. We cannot say that there was any abuse of discretion, and we are consequently of the opinion that there was no error in denying the motion.

The next alleged error is, *second*, an abuse of discretion in refusing a continuance. The motion for a continuance was made upon the affidavit of the defendant himself, and asked that the trial be postponed until the following term of the court. Various reasons are assigned for the continuance in this affidavit, but the principal ones are that witnesses were absent who could prove an *alibi* for him, and also witnesses who could prove from whom he had purchased certain cattle, with the purchase of which he was charged, knowing them to be stolen. The affidavit also alleges that the defendant was not aware of the charges against him until the second week of the term of court at which he was tried, and too late to get his witnesses at that time. This latter charge is denied explicitly by an affidavit of the officer who arrested him, who says that three days after the arrest he visited the defendant in jail, and there informed him of all the charges against him; that he read to him a statement of the charges, which he had fully written out.

As to the first portion of the affidavit which we have recited, alleging inability to secure the attendance of witnesses to prove an *alibi*, and of witnesses to prove how he became possessed of certain cattle alleged to have been stolen, it is quite enough to say that the record shows that, though the defendant, of all other persons in the world, was best informed on these subjects, he failed to take the stand as a witness and testify to these facts in his own behalf. In considering the question of the alleged error for abuse of discretion in denying a continuance, the court cannot shut its eyes to so important a fact, disclosed by the record. On appeal from such a ruling, the court is

authorized to examine the whole record, as well subsequent to as before the ruling, in order to determine whether there was any abuse. It is also entirely proper to take into consideration the fact that the defendant did not himself take the stand as a witness, as it is only at his trial, and before the facts are passed upon by the jury, that failure to do so shall not raise any presumption against him. · After trial, and on the review, the appellate court can consider it. That the defendant should have failed to take the stand as a witness on his own behalf, under the advice of learned and zealous counsel, cannot change the effect which that course must necessarily have upon the court in considering this particular question. To say that the court below grossly abused its discretion, under such a state of the record, would be, in our judgment, wholly unwarranted. We find no error in the ruling.

The next assignment of error is upon the refusal of the court to give the following instructions:

*First.* "The jury is instructed that the testimony of the witness Sierra is not of itself sufficient to warrant the conviction of the defendant in this case: and further, if the jury believes from the testimony that the defendant Kinney was not present when the crime charged in this indictment was committed, but was in El Paso, then he must be acquitted."

*Second.* "The court instructs the jury that the testimony of the accomplice is always received with caution, and that while the jury are the sole judges of the credibility of the witness and of the weight to be given to his testimony, that it is the duty of the court to caution you of the danger of convicting upon the testimony of an accomplice alone."

*Third.* "I instruct the jury that they will not be justified in finding the defendant guilty upon the uncorroborated testimony of the accomplice, Margarito Sierra, and he must be corroborated, not only as to the circumstances of the commission of the crime, but he must be corroborated as to the defendant's connection with it; for it will be presumed that as the witness was present when the crime was committed, and participated in it, that he will tell the circumstances truly. The danger is that after having stated the circumstances truly, that he may accuse some innocent person of the crime in order that he may derive some fancied benefit himself."

*Fourth.* "In weighing the evidence of the witness Margarito Sierra, they should remember that he is a self-convicted thief; that he admits that he helped to steal the cattle; that he admits he was present when they were sold, and that there were witnesses to prove his presence at the sale and connection with the cattle, and that he was liable to prosecution therefor, and that he hoped and expected immunity from his own crimes as a reward for his testimony."

It was not error, in our opinion, for the court below to refuse to charge the first of these proposed instructions, taken as a whole.

The latter part of it, which requests the court to charge the jury that if the defendant was not present when the crime was committed, but was at El Paso, which the evidence shows to be a town many miles distant from the place where the crime was committed, had it stood alone, would have been sound law. But the first part of this instruction, which asks the court to charge that the testimony of the accomplice, Sierra, is not sufficient of itself to warrant the conviction of the defendant in the case, is not the law, in our opinion.

Counsel, in his brief and on the argument, cited section 380, Greenl. Ev., as supporting the proposition that the jury should have been instructed that they could not find the defendant guilty upon the uncorroborated testimony of an accomplice. The part of the section cited is as follows: "It is now so generally the practice to give them said advice, that its omission would be regarded as an omission of duty on the part of the judge." Counsel would have the court believe that this language was used in support of his proposition. Such, however, is not the fact. The whole of the section in question from which counsel cited the portion of a sentence only above quoted, in our judgment, fairly expresses the law on the subject and is as follows: "*The degree of credit* which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. It has sometimes been said that they ought not to believe him unless his testimony is corroborated by other evidence, and without doubt just caution in weighing such testimony is dictated by prudence and good reason. But there is no such rule of law; it being expressly contended that the jury may, if they please, act upon the evidence of the accomplice without any confirmation of his statement. But, on the other hand, judges *in their discretion will advise* a jury not to convict of felony upon the testimony of an accomplice alone, and without corroboration." Then follows, as part of the sentence, the language which counsel cites, as though the author had used it to support the proposition that a conviction could not be had upon the uncorroborated evidence of an accomplice.

For a judge in his discretion to advise a jury not to convict upon the testimony of an accomplice, uncorroborated, is a very different thing from telling them that they could not convict upon such testimony. Of course, it is now and always has been the law that the evidence of a *partnership business* is competent to go to a jury. If such evidence is allowed to go to a jury it logically follows that they have the power to believe and act upon it. It differs only from other evidence in that it necessarily comes from a corrupt source, and is to be viewed with suspicion and received by the jury with the greatest caution. Tayl. Ev. lays the rule down in the same language used by Greenleaf in the section quoted by us. He evidently borrowed it from that author. In the rule as laid down by Taylor, there is, however, this additional proposition: "The jury may, if they please, act upon the evidence of an accomplice, even in a capital case, without

any confirmation of his statement." Phil. Ev. lays down the rule to be: "Since accomplices are competent witnesses, it appears to follow that, if their testimony is believed by the jury, a prisoner may be legally convicted upon it, though it be unconfirmed by any other evidence." Phil. Ev. 110, and notes. In the exercise of a sound discretion the judge will doubtless, in many cases, strongly advise the jury against convicting on such evidence, but the law does not require him to do so, and he is to be governed in the exercise of his discretion by the facts in each particular case.

In the case mostly relied upon by counsel for appellant,—but for another purpose, as we will see later,—Chief Justice GRAY begins the opinion of the court in the following language: "It has always been held that a jury might, if they saw fit, convict on the uncorroborated testimony of an accomplice. Lord HALE, Lord HOLT, and Lord MANSFIELD treated the question of his credibility as one wholly for the determination of the jury, without any precise rule as to the weight to be given to his testimony." *Com.* v. *Holmes,* 127 Mass. 424.

We are, therefore, clearly of the opinion that the court properly refused the first of these proposed instructions.

It was not error for the court to refuse the second instruction asked for, the instructions given by the court having covered it. From the suspicious, and, as we have observed, necessarily corrupt character of the evidence of an accomplice, courts have uniformly instructed juries specially in regard to the mode in which they are to treat it. These instructions vary in the language in which they have been couched, but in effect are that the jury shall receive such testimony with great caution, scrutinize it with much care, and act on it after careful consideration of its source. In the case at bar the court below complied with this rule. On this subject the court charged the jury: "It is a well-settled principle of the law of evidence that the testimony of an accomplice should be received by the jury with great caution; and while you alone are to determine the weight and credibility of the testimony, it is my duty to inform you that in determining the credibility of the testimony of this accomplice, it will be proper for you to consider the fact that he is an accomplice. Also, you should consider the question whether the accomplice had any interest in giving his testimony that might influence him in giving false testimony." This instruction, as we have stated, fully complied with the duty of the court in regard to this question, as we have seen from the numerous authorities cited and considered.

The four instructions asked for we have already fully disposed of by our opinion in regard to the first, and the court properly refused to charge it.

We come now to the final assignment of error, which is the giving of the following instruction by the court: "There is also testimony which, if true, corroborates in some material points the testimony of this accomplice." This instruction the counsel insists was error, for

the reason that there was no evidence to corroborate the accomplice Sierra, which convicted the defendant with the crime. The case of *Com.* v. *Holmes, supra,* is cited as authority on this subject. That case, which was most elaborately examined by the supreme court of Massachusetts, decides, and we think correctly, that to corroborate the evidence of an accomplice does not mean simply to corroborate his story in a general way, as to the fact of the crime itself, but that he must be corroborated by evidence tending to show that the defendant took part in the commission of the crime. The case was cited by the counsel to show that the evidence which was introduced in that case to corroborate the accomplice was similar to what was relied on by the territory in the case at bar; that the supreme court of Massachusetts reversed the judgment in the former case for error in admitting the evidence objected to; and that this court will do so in this cause, because of the similarity of evidence introduced in both cases.

In the Massachusetts case the defendant, Holmes, was indicted for burning the barn and shed of John C. Munson in the night-time of September 11, 1876. An accomplice, Charles Sumer, who had himself been tried and convicted of the same offense, was examined as a witness for the prosecution. He testified, among other things, that on the evening of September 2, 1876, being Saturday, he left his father's house, walked to the village of Housetown, about two miles off, arrived there at 8 o'clock, attended a lecture, which closed at 9 o'clock, went out of the hall, walked with William Moore and two girls whom they found in the street, and that he and Moore separated a little after 10 o'clock; and that he (Sumer) walked alone towards his father's house, and as he approached Munson's barn on his way home he saw a man gather up some straw which lay there, strike a match, and set the straw on fire; that he approached and saw the defendant, who said, "You have caught me;" that he (the witness) put the lighted straw out; that the defendant then told him he would set the barn on fire on the next Saturday, and for him (the witness) to keep still and be prepared to show where he was on that evening, and that after the fire witness should give it out that witness burned the barn, and that he would make it all right with witness; that witness then went home, where he arrived about 12 o'clock at night, and was let in by his father; that during the following week defendant gave witness four ten-dollar bills.

To corroborate the evidence of this accomplice, the prosecution called Uriah Sumer, his father, who testified that his son did come home at 12 o'clock on the night in question, and that he let him in. The defendant objected to the admission of this evidence as immaterial, incompetent, and not admissible to corroborate young Sumer, and as not tending to corroborate him in any material point. But the judge admitted the evidence and defendant excepted. Under like objection and exception the prosecution was permitted, as corroborative of the evidence of the accomplice, to prove that during the week

preceding, as well as the week after the fire, the accomplice was seen with one or more ten-dollar bills. In reversing the judgment in the case, on the ground that the evidence cited was erroneously admitted as corroborating the accomplice, the supreme court said: "The whereabouts of the witness, when not in defendant's company, on the evening of September 2d, was wholly immaterial. The possession of the bank bills before and after the fire, even if it tended to show that he had been hired to commit the crime, had no tendency to prove that the defendant was the person who so hired him. None of this testimony had the slightest tendency to prove any facts connecting the defendant with the crime charged." We think the court was clearly right in the view of the law expressed.

In the case at bar the testimony which it is claimed corroborated the evidence of the accomplice, Sierra, was that of Joseph Hull. Hull testified that he lived at Rincon, and knew the defendant, knowing who also lived at that place. He further testified as follows: *Question.* You say you are quite positive you saw Kinney the day before the cattle were brought in? (Referring to the stolen cattle.) *Answer.* Yes, sir. *Q.* That is, you got up in the morning and found the cattle in the corrall? *A.* Yes, sir. *Q.* And the night before you saw Kinney at Rincon? *A.* Yes, sir.

This evidence, standing alone, does not tend to corroborate the evidence of the accomplice, Sierra, as to the defendant's complicity in the larceny. The fact that Kinney lived where the witness saw him, and in the vicinity of the place where the stolen cattle were corralled, according to the evidence of the accomplice, ought not of itself to affect the question of his guilt or innocence, for the reason that seeing him in the vicinity of his own home would be seeing him where it was usual and proper for him to be. But in view of the defense in this case the evidence in question assumes a totally different aspect. The defendant chose to call several witnesses to prove that he was not at Rincon, where he lived, and where the stolen cattle were taken to, at the time when the accomplice testified he was there and took part in the larceny, but that he was at El Paso, many miles away. This was his defense to the charge, and what he relied upon to establish his innocence. In view of this defense, was it not most important and material evidence to prove that he was in fact not at El Paso, as his witnesses testified, but at Rincon, where the offense was committed. We think that the evidence, in view of the defense interposed, was material, and did tend to prove his complicity in the crime. This being so, it follows that any evidence tending to corroborate the accomplice in this regard was competent and material. The answer of the counsel to the proposition that Hull's evidence was not material, because seeing defendant in the vicinity of his home was not to be taken against him, as that was where he would be naturally, loses all its force when, as the record shows, he destroyed the presumption arising from that evidence in favor of the

defendant by attempting to prove that he was not there, but some-
where else.    We therefore find that the accomplice was corroborated
by this evidence of Hull as to a material point, and that the instruc-
tions of the presiding judge in the court below were sustained by the
evidence.

The judgment is affirmed.