## COMMONWEALTH *vs.* JAMES A. SNOW.

On an indictment for sodomy with J. S., evidence was admitted, against the defendant's objection, that, a week after the alleged crime, the defendant, in soliciting a boy to commit a like offence, said "he had done it with other boys." The judge instructed the jury that if the defendant in this language intended to include J. S., the evidence was competent; but if he did not so intend, they were to exclude it from their consideration. *Held*, that the defendant had no ground of exception.

On an indictment for sodomy with J. S., J. S. testified to the commission of the crime at a certain time in the defendant's rooms; and that he heard a noise at an outer door at the foot of the stairs to the rooms; that the defendant went down and unlocked the door, and said to some one that he had locked it because he was having a nap; and that he saw a woman pass by the door of the defendant's rooms, and go up stairs. A woman who lived over the defendant's rooms testified that she came at said time to the outer door, which was always kept open, and found it locked; that the defendant came down and said he locked the door, because he was having a nap; and that she went up stairs past the door of his rooms. A physician testified that he was called to J. S., who had taken poison, and that after his return the defendant came to the office of the witness and asked if J. S. had said why he took poison. A boy testified that the defendant, a week after the alleged crime, solicited him to commit a like offence, and said he had done it with other boys. *Held*, that this was sufficient evidence in corroboration of J. S. to warrant a conviction, even if J. S. was an accomplice.

On an indictment for sodomy with J. S., J. S. testified to the commission of the crime, but denied his voluntary participation therein. The district attorney admitted in argument that J. S. substantially acquiesced in the act, and must be regarded as an accomplice and in need of corroboration. The defendant requested the judge to rule that it followed from this admission that J. S. knowingly and wilfully testified falsely; and that therefore the defendant could not be properly convicted upon his testimony. The judge refused so to rule. *Held*, that the defendant had no ground of exception.

INDICTMENT charging the defendant with having committed sodomy with Willard A. Smith. Trial in the Superior Court in Suffolk, before *Lord*, J.

Willard A. Smith testified "that on Sunday, August 20, 1871, between 12 and 1 o'clock, he was passing the building where the defendant had his rooms, and saw the defendant sitting at his window ; that the defendant asked him to come up ; that he went up, and the defendant locked the outside door ; that then the defendant committed the act charged ; that while in the act, the witness heard a loud rapping at the outside door, and the defendant went down and let somebody in ; that he heard the defendant say he had been having a nap, and so locked the door ; that the door from the defendant's room into the hall was open a little, and the witness looked out through the crack and saw the defendant and a Mrs. Morse come up stairs, and then saw Mrs. Morse go up the next flight ; and that then the defendant came into his rooms again." He testified not only to the acts committed at the time charged in the indictment, but also to various other acts of a similar nature ; and that all these acts were against his will and his resistance.

Mrs. Morse testified " that she occupied the third floor, and the defendant and his partner the second floor of the building ; that the entrance to both floors was from the street, by a common outside door which was always open during the week, except in the night-time ; that on Sundays it was always locked in the morning until some one came and opened it ; that on August 20, 1871, between 11 and 12 o'clock in the morning, she went out of the building ; that the outside door was then open ; that she returned between 12 and 1 o'clock, and found the outside door locked and a key on the inside ; that no key was usually kept in this door ; that she tried the door hard and shook it, and in a few minutes the defendant came down stairs, unlocked it and let her in, saying to her that he had been having a nap, and that was why he locked it ; that she and the defendant then went up stairs ; that when they reached the second floor the defendant stopped and watched her go up stairs out of sight ; and that she knew of no one else being in the building at the time."

There was evidence tending to show " that the outside door was a common door not only to the rooms of the defendant and to those of Mrs. Morse, but to the rooms of another tenant ; that

it was locked only at night ; and no other instance of any tenant having locked it in the daytime was in evidence; and that one Haynes, the partner in business of the defendant, was liable to enter the defendant's rooms, which were secured only by a night latch."

One Bean, a physician, testified that on the evening of September 5, 1871, he was called to attend Smith, for having taken poison, and went and prescribed for him ; that on the same evening, while sitting in his office, the defendant called at about 11 o'clock, and asked him how Smith was, and if he would die; that the witness said it was uncertain ; that the defendant then asked if Smith had told why he took it, or words to that effect; that the witness told him he had not ; and that the defendant asked the witness the same question twice after this, once as he was sitting at his window a day or two afterwards, and once at an apothecary's shop, two or three days afterwards.

One Holt, a physician, testified that he was in Bean's office the first time the defendant called, and heard a part of the conversation between the defendant and Bean. His testimony to its effect was the same as that of Bean.

One Emerson was allowed, against the defendant's objection, to testify that the defendant, on August 27, 1871, attempted to commit the same offence with him, and said that it would not hurt him, and that he had done it with other boys.

The testimony of Bean, Holt, Mrs. Morse and Emerson was all the evidence that bore upon the question whether Smith was corroborated.

In his argument, the district attorney said that although Smith had testified that the acts were against his will and resistance, still he did not believe that there was such resistance as ought to have been made by Smith, and that notwithstanding any partial resistance, unwillingness or reluctance, he believed that substantially Smith acquiesced, and that in this view he agreed that he was in the situation of a confederate or an accomplice, and required corroboration.

The judge instructed the jury that, in order to make the testimony of Emerson competent, the jury must see, " either from the

language of the defendant itself, or from the language taken in connection with the proved facts, that the defendant in the use of the language intended to include Smith; that if they were satisfied that he did, the declaration was in the nature of a confession, and was competent; that if, however, it did not so appear, then it was evidence only tending to show the commission of another offence; and that evidence of the commission of another crime, even of the same nature, was not competent, and the jury must reject the evidence, and not consider it at all in their deliberations."

The defendant asked the judge to rule that if Smith was assenting to the act he was an accomplice; that it would be unsafe for them to convict upon his uncorroborated testimony; and that there was no evidence in corroboration of him. The judge ruled that it was necessary that Smith should be corroborated, but declined to instruct the jury that there was no evidence in corroboration of him; but instructed them " that there was evidence proper for them to consider upon that subject; that if, in their judgment, that other evidence did show any fact which connected the defendant with the commission of the offence, that was corroborative, and the jury might consider the witness corroborated; that if no other evidence in the case tended to show the defendant's connection with the offence, Smith should be treated as an uncorroborated witness; and that, in such case, he advised them to acquit; but that he could not, upon the testimony as it stood, take the responsibility of advising them to acquit."

He instructed them also " that if in any material point a witness had wilfully and designedly sworn falsely, it would be unsafe to rely upon any part of his testimony; for if in any particular it was ascertained that material testimony was designedly false, the jury could have no sufficient security that the same might not be true of every other portion of his testimony; and that therefore it was the duty of the judge to state to the jury that it was unsafe to rely upon any uncorroborated statement of a witness who in any one thing had knowingly and wilfully testified falsely."

After the conclusion of the judge's charge, the defendant requested the judge to rule as follows : " If the jury can convict

only upon the assumption that the intercourse was voluntary on the part of Smith, and that he willingly submitted himself to the defendant's wishes, as the district attorney contends and concedes in his argument, it would not be safe or proper to convict, for this would be upon the assumption that the witness had willingly sworn falsely, when he said that the act was done against his will, and by force alone. This position assumes falsehood and perjury on the part of the witness, in regard to this point, and that assumption should discredit him."

In reference to this request the judge said: "I am asked to instruct you that if Smith voluntarily submitted to this, that is proof that he has wilfully and corruptly testified. I have no right to say that is so. It is for you to say how far the witness has designedly testified to what is false, and to draw such inferences from it as in your judgment ought to be drawn from it." The judge then read the prayer aloud and said: "This seems to me to be an argument upon the weight of the testimony, rather than a request to give any specific legal instruction, and the only instruction I can give upon that point is the one which I have given you, that the whole is a question for the jury, and the jury must determine whether Smith has made any statement which should detract from his evidence."

The jury returned a verdict of guilty, and at the request of the parties the judge reported the case for the determination of this court. "If the testimony of Emerson was incompetent under the limitations as prescribed at the trial, or if the instructions to the jury relative to the final prayer of the defendant were incorrect, or if there was nothing in the testimony of either Emerson, so far as competent, or of Bean, Holt or Mrs. Morse, which should authorize the jury to consider it as corroboratory of the testimony of Smith, then the verdict to be set aside and a new trial granted: otherwise, judgment to be entered on the verdict."

*A. A. Ranney & D. C. Linscott*, for the defendant.

*J. C. Davis*, Assistant Attorney General, for the Commonwealth.

WELLS, J. Three questions only are presented upon this report,

1. As to the competency of a certain admission by the defendant, testified to by Emerson.

The fact that the defendant attempted to commit, with Emerson, a like offence to that charged in the indictment, was not competent, by itself. It was necessary to be shown, in order to give character and significance to the accompanying declaration, and appears to have been admitted for that purpose only. It was competent for that purpose, if the declaration itself was admissible.

It is true, as the defendant contends, that other instances of a like offence committed by the defendant are not admissible to establish his guilt in the particular instance charged. For the same reason, his confession of such other offences would not be competent. But any confession or conduct of his which has any tendency to show that he is guilty of this particular charge is admissible. The court must see that it may thus affect the defendant; it is then for the jury to determine whether it does so affect him in fact, and to what extent. To render a confession or declaration admissible for the consideration of the jury, it is not necessary that it should be minute or explicit in its reference to the subject matter. It cannot be excluded because it does not, in express terms, define the time and place, or the person with whom the transaction spoken of occurred; nor because it is so general or indefinite as to be applicable to other occurrences than the one under investigation, as well as to that. If it refers to other like occurrences exclusively, it must be rejected as incompetent. But if it may refer to that which is on trial, its indefiniteness or remoteness affects its weight only, and not its admissibility. It is so with the whole class of circumstantial evidence.

The declaration in this case is that he " had done it with other boys." It was made one week only after the alleged offence for which he was on trial. As it was of such a character as to be applicable to that supposed occurrence, it was an inference of fact, to be drawn only by the jury from the declaration itself, from its relation in point of time, and all the circumstances of the case, whether it did so apply or not. The difficulty of making it certain, in point of fact, does not make it incompetent in point of

law.   We think it was submitted to the jury with such guarded precautions as to the use they were to make of it, that no ground of exception is open to the defendant.

2. The testimony of Bean, Holt and Morse, in regard to the conduct of the defendant and the condition of the outer door, as well as that of Emerson, furnished some corroboration to that of Smith; sufficient to warrant the jury in returning a verdict against the defendant, even if Smith was to be regarded in all respects as *particeps criminis.*

3. The defendant contends that, as Smith denied his voluntary participation in the crime, and as the district attorney, in his argument, admitted that he was in fact in the situation of an accomplice, so as to require corroboration, it must follow that Smith knowingly and wilfully testified falsely; and therefore that the defendant could not properly be convicted upon his testimony. He asked the court below so to instruct the jury.   We think the court rightly refused to draw the inference that the witness had wilfully and corruptly testified to what was false, or to give the instruction asked for as to the effect to be given to his denial of voluntary participation, if untrue.   The whole matter of the credit to be given to the witness was for the jury; and it was submitted to them with instructions which appear to us to be unexceptionable.                          *Judgment on the verdict.*