COMMONWEALTH *vs.* DOREEN MOORE
(and six companion cases[1]).

Suffolk.  April 5, 1971. — May 12, 1971.

Present: TAURO, C. J., SPALDING, SPIEGEL, QUIRICO, & BRAUCHER, JJ.

*Practice, Criminal,* Suppression of evidence, Voir dire, Deliberation of jury. *Probable Cause. Arrest. Search and Seizure. Evidence,* Cumulative evidence. *Carnal Knowledge. Constitutional Law,* Due process of law, Cruel and unusual punishment.

There was no error in criminal cases against a male defendant and a female defendant in refusal of the judge during the trial to hold a voir dire concerning an entry and search by police officers of the apartment occupied by the defendants and the victim, or in the refusal of a request then made by the defendants for the first time to suppress as products of an illegal search and seizure a knife, a rubber hose and a vacuum cleaner pipe, where it appeared that the defendants had ample notice that such objects were in the possession of the Commonwealth, that the officers were lawfully admitted to the apartment and had probable cause to arrest the male defendant without a warrant, that the victim picked up the knife from a counter near the male defendant and brought the hose out of the bathroom and handed them to the officers, and that they were given the pipe by someone upstairs who was told to do so by the male defendant. [512–513]

Alleged error in the admission in evidence at a criminal trial of the journal entry of the police report of the arrest of the defendant was inconsequential where the statements in the entry were entirely repetitious of the testimony of the victim and the police. [513–514]

[1] One of the companion cases is against Doreen Moore and five are against Sammy L. Nelson.

It was not a defence to an indictment under G. L. c. 265, § 23, for carnally knowing and abusing a female child under sixteen that the defendant reasonably believed the victim to be over that age. [514]

The possible penalties incurred for a violation of G. L. c. 265, § 23, were not so disproportionate to the offence shown at the trial of an indictment therefor as to constitute cruel and unusual punishment in violation of the Eighth Amendment to the Federal Constitution [515]; nor did enforcement of strict criminal liability violate the due process clause of the Fourteenth Amendment to the Federal Constitution. [515]

At the trial of indictments for serious offences against a male defendant and a female defendant, there was no error prejudicial to the female defendant in the judge's treatment of coercion as a defence where there was no issue of coercion in the cases and the jury were properly so instructed. [515–516]

There was no error in criminal cases, in which the jury returned to the court room about three hours after commencing deliberations and requested instructions on a certain defence, in a supplementary instruction given by the judge which included the substance of the charge given in *Commonwealth* v. *Tuey*, 8 Cush. 1. [516]

INDICTMENTS found and returned in the Superior Court on January 6, 1970.

The cases were tried before *Forte*, J.

*Stephen Axelrad* (*Reuben Goodman* with him) for the defendants.

*William J. Doyle*, Assistant District Attorney (*Elizabeth C. Casey*, Legal Assistant to the District Attorney, with him), for the Commonwealth.

BRAUCHER, J.   This case rests largely on the testimony of the victim, a runaway fourteen-year old girl.   In the words of the prosecutor, she is "not the smartest girl in the world." According to her testimony, she came to Boston alone and was taken in by the defendants, a twenty-three year old pimp, and a seventeen-year old prostitute.   They have been represented by court-appointed counsel and now appeal under G. L. c. 278, §§ 33A–33G, from convictions by a jury on indictments charging the male defendant with carnally knowing and abusing a female child under sixteen and charging both defendants with assault and battery by means of a dangerous weapon and with contributing to the delinquency of a minor.

There was evidence of the following facts.   The victim was

invited to stay with the defendants in a Boston apartment, and did so. They asked her to "go out on the streets" and "make some money." After several days, on the night of Sunday, November 23, 1969, she had sexual relations with the male defendant. The next day, Monday, she and the female defendant solicited a man who was a plainclothes police officer. Both got into his car to go to the apartment, but he arrested them. They spent Monday night in jail, and the male defendant posted bail for them on Tuesday. The female defendant went to stay with her mother and the victim stayed in the apartment alone with the male defendant.

On the following Sunday, November 30, the female defendant returned to the apartment. The male defendant told the victim that she was just getting everyone into trouble and that she ought to leave. He beat her with his hands, a shoe, a length of rubber hose, and a vacuum cleaner pipe. He handed a knife to the female defendant and told her to heat it. She did so and returned it to him, and he used it to burn the victim's neck and cut a pattern on her face. That night the female defendant took the victim to the YWCA and got her a room where she spent the night.

On Monday, December 1, the victim and the female defendant went to the Boston Municipal Court to face the prostitution charge. The victim explained her appearance by saying she had been scratched by a cat and hit by a baseball bat. Her case was placed on file, and she was released in the custody of the aunt of the female defendant. She went back to the apartment but spent the night at the YWCA after the male defendant beat her again.

The victim spent Tuesday night and much of Wednesday at the apartment. On Wednesday evening, December 3, she went out, ostensibly "to get some clothes from the laundry," went to the police station, and made a complaint against the male defendant. A little after midnight she and two officers in uniform went to the apartment. The officers arrested the male defendant, and seized the knife, the rubber hose, and the vacuum cleaner pipe. The next day the

victim swore to a complaint against the female defendant, and she was arrested on the afternoon of December 4.

1. *The seizure.* There was testimony that the victim admitted the police officers to the apartment with a key given her by the male defendant, and other testimony that the male defendant opened the door before she could. One of the officers testified that they then told the male defendant he was under arrest for assault and battery by means of a dangerous weapon and informed him of his rights. The victim then picked up the knife from a counter about seven or eight feet from the male defendant and handed it to the officer. She went into the bathroom, brought out the hose, and handed it to the officer. About ten minutes later, as the patrol wagon arrived, the male defendant called to someone upstairs to give them the pipe, the officers went upstairs, and an unidentified male gave the pipe to them.

The defendants assign as error the judge's refusal to hold a voir dire concerning the entry and search at the apartment and his refusal to suppress the knife, hose and pipe as products of an illegal search and seizure. The attempt to exclude the evidence as illegally obtained was made for the first time when the evidence was offered at the trial and was not timely. Rule 101B of the Superior Court (1954). *Commonwealth* v. *Lewis,* 346 Mass. 373, 382, cert. den. sub nom. *Lewis* v. *Massachusetts,* 376 U. S. 933. *Commonwealth* v. *Penta,* 352 Mass. 271, 277. *Commonwealth* v. *Hanger,* 357 Mass. 464, 468. The defendants had ample notice that the exhibits were in the possession of the Commonwealth. The male defendant aided in the search and was present at the seizures. *People* v. *Williams,* 23 Mich. App. 129, leave to appeal den. 383 Mich. 792. He was personally informed that he was being arrested for assault and battery with a dangerous weapon, and three separate indictments against him for that crime specified, respectively, a rubber hose, a pipe, and a knife.

In the circumstances disclosed by the testimony there was no error in the judge's refusal to hold a voir dire during the trial. Compare *Commonwealth* v. *Gibson,* 357 Mass. 45,

47–48. The evidence in question, consisting of ordinary objects likely to be found in many households, was not of great significance. The police officers were lawfully admitted to the apartment and had probable cause to arrest the male defendant without a warrant. *Commonwealth* v. *Andrews*, 358 Mass. 721, 723. Compare *Hill* v. *California*, 401 U. S. 797. They gave warnings which satisfied *Miranda* v. *Arizona*, 384 U. S. 436. The seizure of the knife was proper even under the stringent standard established in *Chimel* v. *California*, 395 U. S. 752. *Commonwealth* v. *Cohen, ante,* 140, 145. Occupancy by the victim, who had been living in the apartment for about two weeks at the invitation of the defendants, justified her entry into the bathroom where she found the hose.[2] *Commonwealth* v. *Martin*, 358 Mass. 282, 289, n. 3, and cases cited. *Wright* v. *United States*, 389 F. 2d 996, 998–999 (8th Cir.). *People* v. *Howard*, 166 Cal. App. 2d 638, 651. *People* v. *Smith*, 183 Cal. App. 2d 670, 671. Compare *Stoner* v. *California*, 376 U. S. 483 490, where the consent of a hotel clerk was held ineffective. Without any search, the male defendant himself directed a third person in other premises to deliver the pipe to the police. *Raimondi* v. *United States*, 207 F. 2d 695, 696 (9th Cir.). *United States* v. *MacLeod*, 207 F. 2d 853, 854–857 (7th Cir.). See Anno. 9 A. L. R. 3d 858, 883.

The hose and the pipe were offered and admitted as evidence only against the male defendant. No exception to these rulings was taken on behalf of the female defendant, and we therefore have before us no claim of error affecting her. *Commonwealth* v. *Underwood*, 358 Mass. 506, 509. In any event, this evidence was not connected to her in any way and could not have affected the jury's verdict as to her.

2. *The police report.* The male defendant excepted to the admission of the journal entry of the police report of his

---

[2] We need not decide whether seizure by the victim should be treated as her private act, not attributable to the police, under *Burdeau* v. *McDowell*, 256 U. S. 465, 475–476, *United States* v. *Goldberg*, 330 F. 2d 30, 35 (3d Cir.), cert. den. sub nom. *Goldberg* v. *United States*, 377 U. S. 953. Compare *United States* v. *Winbush*, 428 F. 2d 357, 359 (6th Cir.), with *Moody* v. *United States*, 163 Atl. 2d 337 (Mun. Ct. App. D. C.).

arrest, offered by the female defendant to show that she was not mentioned, on the ground that it should have been limited by instruction to the case against her. The judge thought he had given such an instruction, and told the jury that he had. The statements in the entry were entirely repetitious of the testimony of the victim and the police, and could not have affected the jury's verdict. *Commonwealth* v. *Howard,* 355 Mass. 526, 530. *Commonwealth* v. *Izzo, ante,* 39, 43.

3. *Knowledge of the victim's age.* The victim testified that she had an identification card showing that she was eighteen years old and that she told the female defendant she was eighteen. The male defendant argues that the victim convinced many people that she was eighteen, including police officers, her probation officer and her lawyer, and a judge of the Boston Municipal Court. The male defendant excepted to a portion of the judge's charge to the jury in which he stated that a belief that the victim was over eighteen was not a defence to the indictment for carnally knowing and abusing a female child under sixteen.

The judge's charge was in accord with the long-standing interpretation of G. L. c. 265, § 23. *Commonwealth* v. *Murphy,* 165 Mass. 66, 70. For numerous similar decisions in other States, see Anno. 8 A. L. R. 3d 1100, 1102–1103. Compare *People* v. *Hernandez,* 61 Cal. 2d 529. For a proposed legislative change, see Am. Law Inst., Model Penal Code, Proposed Official Draft (1962) § 213.6 (1). The male defendant seeks to distinguish the *Murphy* case as involving only the question whether it was necessary for the prosecution to allege and prove knowledge, and urges us to recognize an affirmative defence that the defendant reasonably believed the child to be over sixteen. Compare *Commonwealth* v. *Elwell,* 2 Met. 190, 192; *Commonwealth* v. *Douglas,* 354 Mass. 212, 219–220, cert. den. sub nom. *Douglas* v. *Massachusetts,* 394 U. S. 960; *State* v. *Audette,* 81 Vt. 400, 402. We think, however, that the court in the *Murphy* case intended to rule that a mistake of fact did not avail the defendant.

The male defendant also asserts that if the statute imposes strict liability it violates the due process clause of the Fourteenth Amendment and imposes a cruel and unusual punishment in violation of the Eighth Amendment. We have recognized that "it is possible that imprisonment in the state prison for a long term of years might be so disproportionate to the offence as to constitute a cruel and unusual punishment." *McDonald* v. *Commonwealth,* 173 Mass. 322, 328, affd. sub nom. *McDonald* v. *Massachusetts,* 180 U. S. 311. *Weems* v. *United States,* 217 U. S. 349, 368. This court, however, considered this point in *Commonwealth* v. *Murphy, supra,* 165 Mass. at 69, and upheld the statute. The possible penalties remain Draconian. G. L. c. 265, § 23 (imprisonment "for life or for any term of years"); G. L. c. 127, § 129 (restriction on good conduct deduction); G. L. c. 127, § 133 (restriction on parole); G. L. c. 127, § 83B (not eligible for reforestation camp); G. L. c. 123A, § 4 (examination as sexually dangerous person); G. L. c. 147, § 4B (authorities to be notified on release from prison). But we do not deem them disproportionate to the offence shown in this case. Nor do we think strict criminal liability is necessarily a denial of due process of law. *Commonwealth* v. *Buckley,* 354 Mass. 508, 511. Compare *United States* v. *Freed,* 401 U. S. 601.

4. *Coercion.* No evidence was presented and no charge to the jury was requested or given on the subject of coercion of either defendant before the jury were sent out to eat lunch and to deliberate. Three hours and nineteen minutes later the jury put to the court this question: "If a person is present while a crime is being committed and has been pressured or coerced into helping a person commit the crime by law is the pressured or coerced person guilty of a crime?" The judge said that real coercion is a defence, gave a definition of coercion and some examples, and said, "But there is no such evidence here. And you have got to judge the case here on the evidence." Counsel for the female defendant took exception to the judge's answer, requested a different instruction on coercion, and excepted to its re-

fusal. There was no prejudicial error. There was no issue of coercion in the case, and the jury were properly so instructed. We need not examine closely the proper formulation to be used in defining a defence of coercion should the issue arise.

5. *The Tuey charge.* When the jury came in to ask about coercion, the court also gave a supplementary instruction which included the substance of the charge given in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2–3. Counsel for both defendants excepted. Twenty-two minutes after coming in the first time, the jury returned again with verdicts of guilty on all seven indictments. There was no error. The judge did not abuse his discretion, nor did the instruction prejudice the defendants. *Commonwealth* v. *Rollins*, 354 Mass. 630, 638. Compare *United States* v. *Hynes*, 424 F. 2d 754, 757–758 (2d Cir.), cert. den. sub nom. *Hynes* v. *United States*, 399 U. S. 933.

*Judgments affirmed.*