COMMONWEALTH *vs.* ALFRED GALLANT.

Franklin.    May 2, 1977. — November 2, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Carnal Knowledge.   Unnatural Sexual Intercourse.   Due Process of Law,* Vagueness of statute.   *Words,* "Unnatural sexual intercourse."

Analysis of the constitutional prohibition against vague criminal statutes. [579-581]
History of G. L. c. 265, § 23. [581-585]
Discussion of statutes related to G. L. c. 265, § 23. [585-587]
Discussion of changes in the scope of statutes governing rape and deviate sexual behavior in other jurisdictions. [587-588]
Discussion of the rape provision of the Model Penal Code. [588-589]
The term "unnatural sexual intercourse" as used in G. L. c. 265, § 23, was not vague as applied to a defendant's act of compelling fellatio by a seven-year-old girl. [590]

INDICTMENT found and returned in the Superior Court on May 6, 1975.

A motion for a new trial was heard by *Lynch,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Conrad W. Fisher* for the defendant.

*Stephen R. Kaplan,* Assistant District Attorney (*Harry L. Miles,* Assistant District Attorney, with him) for the Commonwealth.

QUIRICO, J.   A judge of the Superior Court, in a jury waived trial, found the defendant guilty of abusing and having unnatural sexual intercourse with a child under the age of sixteen years in violation of G. L. c. 265, § 23, and of committing an indecent assault and battery on a child under the age of fourteen years in violation of G. L. c. 265, § 13B.[1] He was sentenced to imprisonment in the State prison for a term of not less than five nor more than seven years on the first charge, and for a concurrent term of not less than three nor more than five years on the second charge.

He initially sought to have his sentences reviewed by the Appellate Division of the Superior Court (see G. L. c. 278, §§ 28A, 28B), but later withdrew his appeal. There was apparently no attempt to pursue a direct appeal on the merits of the convictions, rather only the abortive attempt to have the sentences modified.

Eight months after conviction, the defendant, now represented by new counsel, filed a motion for a new trial, which was denied. The proceedings were made subject to G. L. c. 278, §§ 33A-33G. The defendant appealed from the denial of his motion for a new trial, and we granted his application for direct appellate review. G. L. c. 211A, § 10(A).

The sole assignment of error is that the judge erred in

---

[1] The judge dismissed an indictment for committing an unnatural and lascivious act in violation of G. L. c. 272, § 35A, for the reason that he considered it a lesser included offense of the charge of "unnatural sexual intercourse." The propriety of this action is not before us.

Commonwealth *v.* Gallant.

denying the motion which contended that G. L. c. 265, § 23, which prohibits "[unlawful] sexual intercourse or unnatural sexual intercourse, and [abuse of] a child under sixteen years of age,"[2] is, in the words of the assignment of error, "not clearly defined and is insufficient as a matter of law to allow a citizen to be cognizant of the type of conduct which the statute intends to prohibit and . . . is unconstitutional and void for vagueness." There is before us no appeal from the conviction of indecent assault and battery.

We have before us a ten page transcript of the hearing on the motion for a new trial, and the transcript of the trial. The testimony at trial was as follows. The defendant stayed overnight at the house where the victim, a girl, seven and one-half years old, lived with her parents. After her bedtime, the defendant came to her bedroom, brought her to his bedroom, touched her genitals, penetrated her mouth with his penis, and ejaculated.

We hold that the defendant's motion for a new trial was properly denied, and that G. L. c. 265, § 23, is not unconstitutionally vague as applied to the defendant's conduct.

1. *Vagueness.* The defendant's argument is that "unnatural sexual intercourse" as used in G. L. c. 265, § 23, is unconstitutionally vague because the term does not specify what conduct is prohibited, because the term has not yet been construed by a judicial opinion, and because no common law history or usage clarifies its meaning.

It is possible to discern several strands of analysis collected in the constitutional prohibition against vague statutes. First, and primary, is the doctrine that "[a] law is unconstitutionally vague if it is not sufficiently explicit to

---

[2] General Laws c. 265, § 23, as appearing in St. 1974, c. 474, § 3, provides as follows: "Whoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under sixteen years of age shall, for the first offense, be punished by imprisonment in the state prison for life or for any term of years, or, except as otherwise provided, for any term in a jail or house of correction, and for the second or subsequent offense by imprisonment in the state prison for life or for any term of years, but not less than five years."

give clear warning as to proscribed activities." *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977), "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 (1926). In the succinct language of *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939), "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."

Second, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972).

Third, "[w]here a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith* v. *Goguen*, 415 U.S. 566, 573 (1974). See, Note, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960). There can be no conceivable argument that First Amendment freedoms are implicated in the present case.

Yet the vagueness doctrine is not a counsel of perfection. "The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten* v. *Kentucky*, 407 U.S. 104, 110 (1972). "A law is not vague ... if it requires a person to conform his conduct to an imprecise but comprehensible normative standard so that men of common intelligence will know its meaning." *Commonwealth* v. *Orlando, supra*

at 734. *Commonwealth* v. *Jarrett*, 359 Mass. 491, 496-497 (1971).

A sufficiently definite warning may be achieved by judicial construction, common law meaning, or the statutory history of particular terms. *Commonwealth* v. *Brasher*, 359 Mass. 550, 553 (1971). The constitutional adequacy of a criminal statute must be "measured by common understanding and practices." *Commonwealth* v. *Jarrett, supra* at 497. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 300 (1974), habeas corpus granted sub nom. *Balthazar* v. *Superior Court*, 428 F. Supp. 425 (D. Mass. 1977).

The United States Supreme Court has recently repelled vagueness challenges to statutes regulating unnatural sexual activity. In *Rose* v. *Locke*, 423 U.S. 48, 50 (1975), the Tennessee statute proscribing the "crime against nature" was held not vague as applied to cunnilingus, because it complied with the due process requirement "that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." The Court stated that "[v]iewed against this [due process] standard, the phrase 'crimes against nature' is no more vague than many other terms used to describe criminal offenses at common law and now codified in state and federal penal codes." *Id.* See *Wainwright* v. *Stone*, 414 U.S. 21 (1973). Cf. *Doe* v. *Commonwealth's Attorney*, 425 U.S. 901 (1976), aff'g 403 F. Supp. 1199 (E.D. Va. 1975).

"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States* v. *Powell*, 423 U.S. 87, 92 (1975). *United States* v. *Mazurie*, 419 U.S. 544, 550 (1975). *United States* v. *National Dairy Prods. Corp.*, 372 U.S. 29, 33 (1963). We must thus assess the asserted vagueness of a statute forbidding "unnatural sexual intercourse" in the context of evidence that the defendant penetrated the mouth of a young girl with his penis.

2. *Statutory discussion.* The evolution of the present statutory scheme requires some discussion. Prior to 1974, G. L. c. 265, § 23, as appearing in St. 1966, c. 291, made

it a crime to "unlawfully and carnally [know] and [abuse] a female child under sixteen years of age . . . ."[3] The crime had been described as "consensual intercourse with a female under the age of sixteen years . . . (commonly called 'statutory rape')." *Commonwealth* v. *Franks,* 365 Mass. 74, 77 (1974).

While it is unnecessary to trace the lineage of G. L. c. 265, § 23, in great detail, it is clear that its history is entwined with that of the common and statutory law of rape. As stated in *Commonwealth* v. *McCan,* 277 Mass. 199, 203 (1931), "[r]ape is the carnal knowledge of any woman above the age of consent against her will, *and of a female child under the age of consent with or against her will:* its essence is the felonious and violent penetration of the person of the female by the defendant" (emphasis added). In *Commonwealth* v. *Roosnell,* 143 Mass. 32, 38 (1886), the court said that "in Massachusetts the offence of unlawfully and carnally knowing and abusing a female child under the age of ten years is, and for more than two hundred years has been, known and designated as rape." The court then explained why in such a case it is "not necessary to aver or prove that the acts were done against her will, or without her consent. The reason is, that, from her tender years, she is held in law to be incapable of giving a valid consent to such acts, and the law conclusively presumes that she did not consent." *Id.* at 39.[4] See *Commonwealth* v. *Sugland,* 4 Gray 7, 10 (1855).

"The statutory crime of carnally knowing and abusing

---

[3] The full text of the statute before the 1974 amendment was as follows: "Whoever unlawfully and carnally knows and abuses a female child under sixteen years of age shall, for the first offense, be punished by imprisonment in the state prison for life or for any term of years, or, except as otherwise provided, for any term in any other penal institution in the commonwealth, and for the second or subsequent offense by imprisonment in the state prison for life or for any term of years, but not less than five years."

[4] In *Commonwealth* v. *Murphy,* 165 Mass. 66, 69 (1895), this court said that "[t]here is no doubt of the intention of the Legislature to treat the crime of having carnal connection with a girl under the age of sixteen years as rape, even if she gives her full consent so far as she is capable of consenting."

a female child under the age of sixteen (G. L. [Ter. Ed.] c. 265, § 23), unlike the crime of rape (G. L. [Ter. Ed.] c. 265, § 22), does not require as elements to be proved that the acts of the defendant were done with force or without the consent of the victim. *Commonwealth* v. *Roosnell*, 143 Mass. 32 [1886]. *Commonwealth* v. *Hackett*, 170 Mass. 194 [1898]. The matter of the consent of such a child is immaterial under the statute first above cited. That statute makes her incapable, as matter of law, of giving any effective consent. The statutory crime is committed even if [the act] is committed with her full consent. *Commonwealth* v. *Murphy*, 165 Mass. 66 [1895]. The Legislature as a matter of public policy, for the protection of female children under the age of sixteen, has fixed an age below which a female child is to be held legally incapable of consenting to assaults of this character." *Glover* v. *Callahan*, 299 Mass. 55, 58-59 (1937). See *Commonwealth* v. *Moore*, 359 Mass. 509, 514-516 (1971); *Commonwealth* v. *Ellis*, 321 Mass. 669 (1947).

By St. 1974, c. 474, § 3 (1974 amendment), entitled "An Act redefining the elements constituting the crime of rape and related offenses," G. L. c. 265, § 23, achieved its present form. See note 2 *supra.*

The amendment to G. L. c. 265, § 23, must be viewed as part of a comprehensive attempt to redefine the legal elements of rape.[5] In general the 1974 amendment eliminated prior language which defined the victims of rape as "female" or "female children." Instead, the victims are now defined as persons or children and the generic masculine pronoun is substituted throughout. Both males and females are protected from sexual assault by the same statute, which is neutral as to the gender of the victim. Nor does the statute define the various crimes with refer-

---

[5] The 1974 amendment changed the language of G. L. c. 265, § 22 (forcible rape), G. L. c. 265, § 22A (forcible rape of a minor), G. L. c. 265, § 23 (consensual intercourse with a minor), G. L. c. 265, § 24 (assault with intent to rape), G. L. c. 265, § 24B (assault of a minor with intent to rape), and G. L. c. 277, § 39 (definitions for indictments).

ence to the gender of the offender. The result is that the penalties for "sexual intercourse" and "unnatural sexual intercourse" are the same without regard to the gender of the victim.[6]

By extending the protection of the various rape statutes to men and male children, the statute necessarily reworks the common law definition of rape. The archaic terminology of "ravishing" and "carnal knowledge" is replaced by the more contemporary "sexual intercourse."[7] By sexual intercourse, the Legislature undoubtedly intended the traditional common law notion of rape, the penetration of the female sex organ by the male sex organ, with or without emission.[8] See *Commonwealth* v. *Coderre,* 360 Mass. 869 (1971); *Commonwealth* v. *Goldenberg,* 338 Mass. 377, 382-383, cert. denied, 359 U.S. 1001 (1959); *Commonwealth* v. *McCan,* 277 Mass. 199, 203 (1931); *Commonwealth* v. *Hussey,* 157 Mass. 415, 416 (1892); R. Perkins, Criminal Law 154-156 (2d ed. 1969).

Similarly, the definition of "unnatural sexual intercourse" must be taken to include oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body. Because males, by redefinition, may be the victims of "unnatural sexual intercourse," the Legislature necessarily intended to treat

---

[6] This change eliminated numerous incongruities. Prior to 1974, for example, forcible sexual intercourse with a female child under sixteen (G. L. c. 265, § 22A) was punishable by a possible sentence to State prison for life, while forcible sexual intercourse with a male child would most likely have been charged as an unnatural and lascivious act with a child under G. L. c. 272, § 35A, and punishable with a possible sentence to State prison for five years.

[7] In many previous decisions, "unlawful sexual intercourse" is used synonymously with "unlawful carnal knowledge." E.g., *Commonwealth* v. *Piccerillo,* 256 Mass. 487, 489 (1926).

[8] "But from very early times, in the law, as in common speech, the meaning of the words 'carnal knowledge' of a woman by a man has been sexual bodily connection." *Commonwealth* v. *Squires,* 97 Mass. 59, 61 (1867).

modes of sexual connection other than common law rape as equally serious invasions of personal integrity. "Where it is possible, as it is here, a statute should be construed so as to avoid rendering words in that statute meaningless." *A Juvenile, petitioner,* 364 Mass. 531, 536 (1974). "[E]very phrase of a statute should be given some effect," *Commonwealth* v. *Brooks,* 366 Mass. 423, 428 (1974), and we briefly explore common law, related statutory enactments, prior judicial opinions, and common understanding to support our view of the Legislature's intended meaning of "unnatural sexual intercourse."

3. *Related statutes.* The statutory prohibitions of "unnatural and lascivious acts," G. L. c. 272, §§ 35, 35A, and of "the abominable and detestable crime against nature," G. L. c. 272, § 34, give some indication of the scope of the word "unnatural" as used in G. L. c. 265, § 23.

We recently rejected a claim that the prohibition of "unnatural and lascivious acts" is void for vagueness in *Commonwealth* v. *Balthazar,* 366 Mass. 298 (1974).

We there reiterated the holding of *Jaquith* v. *Commonwealth,* 331 Mass. 439, 442 (1954), that the words "unnatural and lascivious act" are "words of common usage and indicate with reasonable clarity the kind and character of conduct which the Legislature intended to prohibit and punish," and defined them to mean "irregular indulgence in sexual behavior, illicit sexual relations, and infamous conduct which is lustful, obscene, and in deviation of accepted customs and manners." While we construed G. L. c. 272, § 35, as "inapplicable to private, consensual conduct of adults," *Commonwealth* v. *Balthazar, supra* at 302, we found no constitutional infirmity in applying the prohibition to the defendant's acts of "compelling the victim to put her mouth on his genitals and on his buttocks or anus." *Id.* at 303.

The rationale of treating consensual adult conduct differently from coercive behavior has no application when the victim is a child incapable by law of consent to the act. The prior history of G. L. c. 265, § 23, as noted pre-

viously, makes irrelevant the consent of children under
sixteen to the prohibited activities.[9] The 1974 amendment
makes no change in that aspect of preexisting law, as may
be seen by comparing G. L. c. 265, § 22A, which requires
proof that the defendant "compels ... [a] child to submit
by force and against his will or ... by threat of bodily
injury," with G. L. c. 265, § 23, which requires no such
proof. The evidence at trial in the present case, that of
fellatio with a seven-year-old girl, obviously takes the acts
of the defendant out of the limited shelter recognized by
the *Balthazar* case for consensual acts of adults committed
in private.

There is thus no doubt that the defendant has been
found guilty of what is an "unnatural and lascivious act"
within the context of G. L. c. 272, § 35A.[10] See *Common-
wealth* v. *Morgan,* 369 Mass. 332, 344-345 (1975), cert.
denied, 427 U.S. 905 (1976); *Commonwealth* v. *Hanscomb,*
367 Mass. 726, 731 (1975); *Commonwealth* v. *LaBella,*
364 Mass. 550 (1974); *Commonwealth* v. *Delano,* 197
Mass. 166 (1908); *Commonwealth* v. *Dill,* 160 Mass. 536
(1894); *Commonwealth* v. *Polidoro,* 4 Mass. App. Ct. 794
(1976); *Commonwealth* v. *Jackson,* 3 Mass. App. Ct. 770
(1975); *Commonwealth* v. *Deschamps,* 1 Mass. App. Ct.
1, 4-5 (1972). He cannot be heard to argue that his con-
duct was not prohibited by prior law. His argument ulti-
mately becomes the claim that, if he had reflected on the
legal implications of his conduct, he would have thought
he was violating one statute — G. L. c. 272, § 35A — when
in fact he was violating another — G. L. c. 265, § 23.[11] It

---

[9] See the Reporters' Comments to the Model Penal Code, § 207.4, at
251-252 (Tent. Draft No. 4, 1955): "Special treatment of consensual
intercourse with a child is warranted not only because the immature
require protection and to prevent the outrage to parental and com-
munity feelings, but also because an adult male's proclivity for sex re-
lations with children is a recognized symptom of mental aberration,
called pedophilia."

[10] This statute is applicable to victims who are children under the
age of sixteen.

[11] While there is of course the objection that punishment under G. L.
c. 265, § 23, is potentially more severe than under G. L. c. 272, § 35A,

seems apparent that the use of "unnatural" in both G. L. c. 272, § 35, and G. L. c. 265, § 23, was not coincidental, and that the Legislature meant to incorporate fellatio with a minor as an act forbidden as "unnatural sexual intercourse."

The "crime against nature," G. L. c. 272, § 34, constitutes a statutory enactment of the common law of sodomy, and reaches anal penetration and bestiality. See *Commonwealth* v. *Snow*, 111 Mass. 411 (1873); R. Perkins, Criminal Law 389-392 (2d ed. 1969); Note, The Crimes Against Nature, 16 J. Pub. L. 159 (1967). The changes enacted by the 1974 amendment suggest that anal intercourse was intended to be included within the prohibition against "unnatural sexual intercourse."

4. *Other jurisdictions.* The 1974 amendment must also be viewed in the context of a nationwide movement to analyze, reformulate, and redefine the law governing rape and deviate sexual behavior.[12] Of particular interest, the House of Delegates of the American Bar Association adopted a resolution urging a revision of various aspects of the law of rape and calling for a "redefinition of

---

there are several difficulties with this analysis. Arguments about incremental deterrence from varying potential punishments have no place in analyzing the vagueness of a statute. The salient point is that the defendant's conduct was prohibited long before any statutory amendment, and that there was fair notice that his acts were forbidden. Furthermore, the penalties in this case are not disproportionate to the offense, although "[t]he possible penalties [under G. L. c. 265, § 23] remain Draconian." *Commonwealth* v. *Moore,* 359 Mass. 509, 515 (1971). Within constitutional limitations not involved here, *id.,* the Legislature has plenary power to determine the appropriate punishment for crimes. Compare *Commonwealth* v. *Jackson,* 369 Mass. 904 (1976), with *Commonwealth* v. *O'Neal,* 367 Mass. 440, *S. C.* 369 Mass. 242 (1975) and *Opinion of the Justices,* 372 Mass. 912 (1977).

[12] See Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum. L. Rev. 1, 10-12 (1977); Note, Sexual Assault Law Reform in Colorado — An Analysis of House Bill 1042, 53 Den. L.J. 349 (1976); Potter, Sex Offenses, 28 Me. L. Rev. 65, 67-76 (1976); Note, Recent Statutory Developments in the Definition of Forcible Rape, 61 Va. L. Rev. 1500 (1975); Note, Rape Reform Legislation: Is it the Solution, 24 Clev. St. L. Rev. 463 (1975); Legislative Note, Michigan's Criminal Sexual Assault Law, 8 U. Mich. J.L. Reform 190 (1974).

rape and related crimes in terms of 'persons' instead of 'women.' " 61 A.B.A.J. 465 (1975).[13] This resolution followed the adoption of the 1974 amendment, but evinces a spirit analogous to those changes.

While it is difficult to generalize about the trend of these diverse and local changes, it seems clear that they are intended to broaden the scope of the crime, and to recognize that sexual intrusions other than those constituting "carnal knowledge" deserve equivalent punishment. These enactments may have served as models for the adoption of the term "unnatural sexual intercourse."

New York, for example, defines "deviate sexual intercourse" to mean "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva." N.Y. Penal Law § 130.00 (2) (Consol. 1977). See Conn. Gen. Stat. § 53a-65 (2) (1977). While the defendant argues that such explicit enactments show the vagueness of "unnatural sexual intercourse" as used in G. L. c. 265, § 23, we think the Legislature may well have referred to those definitions in choosing that comprehensive and comprehensible term.

5. *Model Penal Code.* The Model Penal Code has been the source of much of the recent legislation on rape and contains provisions very similar to the language adopted in the 1974 amendment. The rape provision, reproduced in the margin,[14] prohibits "sexual intercourse [which] in-

---

[13] The proponent of the resolution is quoted as saying that sexual assaults are on the increase and that in most States male rape is prosecuted only under sodomy statutes, often punished as misdemeanors: "The crimes need to be redefined ... [c]riminal sexual offenses happen to both men and women and are not confined to simple penetration. Most important, rape is not a sexual act. It is a violent criminal act." 61 A.B.A.J. 464 (1975).

[14] Model Penal Code § 213.1 (Proposed Official Draft 1962) provides, in part, as follows: "(1) *Rape.* A male who has sexual intercourse with a female not his wife is guilty of rape if: (a) he compels her to submit by force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping, to be inflicted on anyone; or (b) he has substantially impaired her power to appraise or control her conduct by administering or employing without her knowledge drugs, intoxicants

cludes intercourse per os or per anum, with some penetration however slight." Another provision (§ 213.2 [1]) prohibits "deviate sexual intercourse," virtually a cognate for the term "unnatural sexual intercourse" as used in G. L. c. 265, § 22A, and is defined as follows: "Deviate sexual intercourse means sexual intercourse per os or per anum between human beings who are not husband and wife, and any form of sexual intercourse with an animal."[15]

We have often looked to the Model Penal Code in our scrutiny of issues in the criminal law,[16] and it is likely that the Legislature considered this model in enacting the 1974 amendment. There is no question that the defendant's alleged acts would constitute deviate sexual intercourse as that term is used in the Model Penal Code.

6. *Common understanding.* In *Commonwealth* v. *Jarrett,* 359 Mass. 491, 496-497 (1971), in considering a claim that a statute was unconstitutionally vague, this court said that "if the language which is challenged conveys sufficiently definite warning as to the proscribed conduct *when measured by common understanding and practices,* it is constitutionally adequate" (emphasis added). If ever the term "unnatural" deserves to be employed to characterize forbidden conduct, this is surely an appropriate case. It is difficult to imagine conduct more violative of social and behavioral expectations, or more disruptive of psychic

---

or other means for the purpose of preventing resistance; or (c) the female is unconscious; or (d) the female is less than ten years old.... *Sexual intercourse includes intercourse per os or per anum, with some penetration however slight; emission is not required* (emphasis added). For an earlier draft see Model Penal Code § 207.4 (Tent. Draft No. 4, 1955) and Comment at 241-265. The Reporters' Comments state, at 243-244, that "[c]arnal knowledge, as defined in ... [the code], includes abnormal intercourse by the mouth or anus, as well as normal genital copulation. In this respect our provisions in the nature of rape are broader than those found in prevailing legislation, although some of the additional behavior would be covered by existing sodomy laws. From the point of view of the woman who is attacked, these deviate forms of aggression would usually be equally shocking and abhorrent."

[15] For an earlier draft see Model Penal Code § 207.5 (Tent. Draft No. 4, 1955) and Comment at 276-281.

[16] E.g., *Commonwealth* v. *Klein,* 372 Mass. 823, 830-831 (1977); *Commonwealth* v. *Richards,* 363 Mass. 299, 305-308 (1973); *Alegata* v. *Commonwealth,* 353 Mass. 287, 304 (1967).

integrity.[17] We believe there would be little disagreement as to whether the defendant's conduct offended the common understanding and practices of "unnatural sexual intercourse."

7. *Conclusion.*    Based on our examination of the many sources of law discussed above, it is our conclusion that the Legislature intended "unnatural sexual intercourse," as used in G. L. c. 265, § 23, to include the defendant's act of fellatio with a child. It is probable that the Legislature deemed fruitless any attempt to delineate the full variety of coercive sexual intrusions it wished to include in the overarching term "unnatural sexual intercourse." While the scope of the term is broad, it is surely no broader than the conduct it seeks to encompass. "Without undertaking to consider acts not involved in this case, we conclude that there is no unconstitutional vagueness in [the statute] as applied to the defendant." *Commonwealth* v. *Balthazar,* 366 Mass. 298, 302 (1974). The defendant had clear notice that compelling fellatio by a child was a criminal act, *id.,* and the legislative enactments making such conduct "unnatural sexual intercourse" give him no ground for complaint.

*Judgment affirmed.*

---

[17] The following views of Susan Brownmiller in Against Our Will 424-425 (1975), cited in the Commonwealth's brief, lend additional support to this view. "Sexual assault in our day and age is hardly restricted to forced genital copulation, nor is it exclusively a male-on-female offense. Tradition and biologic opportunity have rendered vaginal rape a particular political crime with a particular political history, but the invasion may occur through the mouth or the rectum as well. And while the penis may remain the rapist's favorite weapon, his prime instrument of vengeance, his triumphant display of power, it is not in fact his only tool. Sticks, bottles and even fingers are often substituted for the 'natural' thing. And as men may invade women through other orifices, so, too, do they invade other men. Who is to say that the sexual humiliation suffered through forced oral or rectal penetration is a lesser violation of the personal, private inner space, a lesser injury to mind, spirit and sense of self?

"All acts of sex forced on unwilling victims deserve to be treated in concept as equally grave offenses in the eyes of the law, for the avenue of penetration is less significant than the intent to degrade. Similarly, the gravity of the offense ought not be bound by the victim's gender. That the law must move in this direction seems clear."