Tierney, J.
INTRODUCTION
The defendant, Robert C. Smith is charged with two counts of incest in violation of G.L.c. 272, §17,[1] one count of indecent assault and batteiy on a child under 14 years in violation of G.L.c. 265, §13B,[2] and one count of assault and batteiy in violation of G.L.c. 265, §13A.[3] This matter is before the court on Smith’s motion to dismiss the two charges of incest pursuant to Mass.R.Crim.P. 13(c) on the ground that the Commonwealth failed to introduce sufficient evidence to the grand juiy to sustain an indictment on those charges. For the reasons discussed below, the defendant’s motion to dismiss indictment #97937 and indictment #97938 is ALLOWED.
BACKGROUND
The charges against Smith arise from allegations made by his daughter, Becky Louise Smith (Becky). In support of the four indictments, the Commonwealth presented the testimony of three witnesses: the alleged victim, Becky Smith; Becky’s boyfriend, Michael R. Newell; and State Trooper Leonard G. Coppenrath, the officer to whom Becky made the allegations against her father. The Grand Jury heard Becky’s testimony that on numerous occasions after she began to develop at approximately age eleven, her father rubbed creme on her breasts several times a week, used his hand to “flip” her breast as she walked by on numerous occasions, and had her lie down while he massaged her breasts for a 15-20 minute period on three separate occasions. Becky further testified that on several occasions her father licked her nipples, put his hand down her pants, and penetrated her vagina with his finger. Finally, Becky testified that on several occasions, her father requested that she touch his penis and perform fellatio on him, and she complied.
The Grand Juiy also heard the testimony of Michael Newell, who stated that Becky told him that her father made her perform oral sex on him, and that Becky said her father “done eveiything to me but go all the way.” Finally, the Grand Jury heard testimony by Trooper Coppenrath, who testified that the defendant, Robert Smith, had admitted rubbing sports cream on his daughter’s breasts, but denied any other sexual contact with Becky.
DISCUSSION
As a general rule, an indictment valid on its face should not be dismissed absent a showing that the defendant’s ability to obtain a fair trial is prejudiced. Commonwealth v. Pellegrini, 414 Mass. 402, 405-06 (1993). Thus, in most cases, the Court should not inquire into the adequacy or competency of the evidence upon which an indictment is based. Commonwealth v. Robbinson, 373 Mass. 591, 592 (1977); Commonwealth v. Salman, 387 Mass. 160, 166 (1982). However, the Court will examine the Grand Juiy minutes where there is a claim that an indictment was unsupported by any evidence of criminal activity by the defendant. Commonwealth v. McCarthy, 385 Mass. 160, 161 (1982).
In order for indictments to fulfill their traditional function as an effective protection against unfounded criminal prosecutions, they must be supported by at least enough evidence to establish both the identity of the accused and probable cause to arrest him. Commonwealth v. McCarthy, supra at 163; Commonwealth v. Angiulo, 415 Mass. 502, 510 (1993). The requisite standard for a valid indictment is thus whether the grand jury heard reasonably trustworthy information sufficient to warrant a prudent man in believing that the defendant had committed or was committing the offense charged. Commonwealth v. McCarthy, supra at 163; Commonwealth v. O’Dell, 392 Mass. 445, 450-52 (1984); Commonwealth v. Club Caravan, Inc., 30 Mass.App.Ct. 561, 566-67 (1991). Probable cause to arrest does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction; there is a large difference in the quanta and modes of proof required to establish guilt in a criminal trial and to show probable cause for an arrest, and the latter is considerably less exacting. Commonwealth v. O’Dell, supra at 451; Commonwealth v. DeCologero, 19 Mass.App.Ct. 956, 958 (1985).
General Laws chapter 272 Section 17 provides:
Persons within the degrees of consanguinity within which marriages are prohibited or declared by law to be incestuous and void, who intermarry or have sexual intercourse with each other, shall be punished by imprisonment in the state prison for not more than twenty years or in jail for not more than two and one half years. G.L.c. 272, §17 (1992).
In the present case, it is undisputed that the Grand Jury heard reasonably trustworthy information that the relationship between the defendant Smith and the *186 alleged victim, Becky, was one of a degree of consanguinity within which marriages are prohibited. See G.L.c. 207, §1 (1994) (stating that no man shall marry his daughter); G.L.c. 207, §2 (1994) (stating that no woman shall marry her father). However, Smith contends that no evidence was presented to the Grand Jury concerning the second essential element of incest, sexual intercourse, because the language of c. 272, §17 proscribes only traditional penile to vaginal intercourse, such that the Commonwealth lacked probable cause to indict him for that crime.
Neither Chapter 272, §17 itself nor the case law explicitly defines the meaning of the term “sexual intercourse” in the context of the incest statute, although the earliest reported case states that “carnal knowledge and penetration were necessary” to prove the statutory crime of incest. Commonwealth v. Lynes, 142 Mass. 577, 581 (1886). An examination of the rape statute, G.L.c. 265, §22, is instructive, however, in that traditionally the crime of rape was also defined in terms of carnal knowledge, as the ravishing and carnal knowledge of a female by force and against her will. See St. 1893, c. 466, §1; R.L. c. 207, §22 (1902); Commonwealth v. McCan, 277 Mass. 199, 203 (1931). The archaic terminology of “ravishing” and “carnal knowledge” was later replaced by the more contemporary statutory term “sexual intercourse.” Commonwealth v. Gallant, 373 Mass. 577, 584 (1977). In discussing the meaning of that term in the context of c. 265, §22, the Supreme Judicial Court has stated “[b]y sexual intercourse, the Legislature undoubtedly intended the traditional common law notion of rape, the penetration of the female sex organ by the male sex organ, with or without emission.” Commonwealth v. Gallant, 373 Mass. 577, 584 (1977); Commonwealth v. Brattman, 10 Mass.App. 579, 583 (1980). Thus, it appears that the term “sexual intercourse” as used in the incest statute, c. 272, §17, to refer to the concept of carnal knowledge, should similarly be interpreted as contemplating traditional penile to vaginal penetration.[4]
Moreover, this conclusion is bolstered by the fact that in a comprehensive 1974 amendment to Chapter 265 of the General Laws, entitled “an Act redefining the elements constituting the crime of rape and related offenses,” the Legislature explicitly redefined the crimes of rape (c. 265, §22), forcible rape of a minor (c. 265, §22A) and statutory rape (c. 265, §23) to include acts of both “sexual intercourse” and “unnatural sexual intercourse.” See St. 1974, c. 474, §1; Commonwealth v. Gallant, supra at 584; Commonwealth v. Gonzales; 5 Mass.App.Ct. 705, 707 (1977); Commonwealth v. Mosby, 11 Mass.App.Ct. 1, 18 (1980). In contrast to the traditional notion of penile to vaginal penetration, the Supreme Judicial Court has defined the term “unnatural sexual intercourse” as used in these statutes to mean “oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person’s body or other object into the genital or anal opening of another person’s body.” Commonwealth v. Gallant, supra at 584; Commonwealth v. Mamay, 5 Mass.App.Ct. 708, 710 (1977); Commonwealth v. Mosby, supra at 18.
Unlike the rape and related statutes, however, the incest statute does not explicitly define that crime to include both intercourse in the traditional sense and unnatural sexual intercourse. Rather, c. 272, §17 makes reference only to “sexual intercourse,” which as interpreted by the S.J.C., contemplates only the penetration of the female sex organ by the male sex organ, with or without emission. Thus, this Court is reluctantly forced to conclude that in failing to include the term “unnatural sexual intercourse” in the statutory definition of the crime of incest, the Legislature intended to criminalize only the traditional common law notion of penile to vaginal intercourse as between individuals within a certain degree of consanguinity.
The case cited at length by the Commonwealth, Commonwealth v. Fouse, 612 A.2d 1067 (Pa. Super. Ct. 1992), rev. den., 629 A.2d 1376 (1993), does not compel a different result. The Pennsylvania statute at issue in Fouse stated that “[a] person is guilty of incest, a misdemeanor of the first degree, if he knowingly marries or cohabits or has sexual intercourse with an ancestor or descendant. . .” 18 Pa. Cons. Stat. Ann. c. 43 §4302 (1992). Noting that the incest statute did not define the term “sexual intercourse,” nor was that term defined elsewhere within Chapter 43 concerning “Offenses against the Family,” the defendant argued that its meaning should be limited to only vaginal intercourse, and should not extend to his alleged acts of anal intercourse with his son. Commonwealth v. Fouse, supra at 1069. Instead, however, the Court applied the definition of “sexual intercourse” found in a different portion of the Crimes Code, Chapter 31 concerning “Sexual Offenses,” which defined the term to include not only traditional acts of intercourse, but also oral and anal intercourse. Id.
The Court noted that although the crime of incest was located in the code chapter concerning family offenses, it in fact involved a sexual offense, and reasoned that “[w]here, as here, the legislature has defined a term in one chapter of the Crimes Code, we decline to conclude that the legislature intended for a different definition to apply where the same term is used in another chapter.” Id. Thus, the court interpreted the term “sexual intercourse” as used in the incest statute to encompass both oral and anal intercourse, just as it did in the statutes concerning sex offenses. Id. In further support of its conclusion, the Pennsylvania court noted that the Webster’s Dictionary definition of sexual intercourse includes “genital contact between individuals other than the penetration of the vagina by the penis,” and suggested that the limited definition urged by the defendant would both fail to promote two of the purposes of the incest statute, the protection of children from parental abuse and the *187 promotion of the family unit, and lead to the absurd result that a father engaging in vaginal intercourse with his daughter would be guilty of incest, while a father engaging in anal intercourse with his son would not be. Commonwealth v. Fouse, 612 A.2d at 1070.
While this Court concurs with the cogent policy arguments expressed by the court in Fouse, the language and structure of the statutes at issue here mandate a different result. Unlike the Pennsylvania scheme, the Massachusetts statutes explicitly define some sexual offenses such as rape, rape of a child, and statutoiy rape to include both “sexual intercourse” and “unnatural sexual intercourse,” while defining the crime of incest as merely involving “sexual intercourse.” This distinction leads to the inescapable conclusion that the term “sexual intercourse” as used in the incest statute was not intended to encompass “unnatural" acts such as those committed by Smith in the present case. If the term “sexual intercourse,” as the statutory successor to the term “carnal knowledge,” contemplated acts such as fellatio, cunnilingus and anal intercourse, it would have been unnecessary for the Legislature to broaden the scope of crimes such as rape to explicitly include a separate category of acts deemed “unnatural sexual intercourse.” Further, had the Legislature intended the crime of incest to encompass such acts, it could easily have amended c. 272, §17 to similarly include “unnatural sexual intercourse.” If the failure of the Legislature to do so was in the nature of an. unfortunate oversight, then it is the task of that body, and not this Court, to effectuate the necessary changes to the statute.
In order to withstand a motion to dismiss an indictment, the Commonwealth must present enough evidence to establish probable cause to believe that the defendant committed the crime charged. Commonwealth v. McCarthy, supra at 163; Commonwealth v. Fryar, 414 Mass. 732, 744 (1993). With respect to the two charges of incest against Smith, the Grand Jury heard no evidence to warrant the belief that he more probably than not engaged in “sexual intercourse” with his daughter Becky as that term is used in G.L.c. 272, §17: i.e., the penetration of the female sex organ by the male sex organ. While Smith’s conduct was undoubtedly abhorrent, and probably criminal, it did not constitute the statutoiy crime of incest. The incident leading to indictment #97937 might have resulted in an indictment for statutory rape under G.L.c. 265, §23 provided the incident occurred prior to the victim’s 16th birthday. Accordingly, indictments # 97937 and # 93938, charging Smith with incest, must be dismissed.
ORDER
Based on the foregoing, it is hereby ORDERED that the defendant’s motion to dismiss indictment #97937 and indictment #93938 be ALLOWED.

 Indictment #97937 and indictment #97938.

 Indictment #97939.

 Indictment #97940.

 This Court notes that the few reported cases involving incest make reference to such “traditional” sexual intercourse. See Commonwealth v. Domaingue, 397 Mass. 693, 704 n.6 (1986) (holding that there was sufficient evidence to send an incest case to a jury where the victim testified generally about “having sex” with her father but also testified that “he put his penis into my vagina”); Commonwealth v. Doe, 8 Mass.App.Ct. 297, 302 (1979) (affirming an incest conviction where the victim testified that the defendant “put his penis in my vagina”).